UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

VIRGIL EUGENE GRIFFIN,

    Plaintiff,

    v.                                          CAUSE NO. 3:22-CV-122-JD-MGG

ROBERT CARTER, et al.,

    Defendants.

## OPINION AND ORDER

Virgil Eugene Griffin, a prisoner without a lawyer, filed a first amended complaint against four defendants alleging his rights under the Equal Protection Clause of the Fourteenth Amendment have been violated because he was subjected to new or additional restrictions while housed in D-cellhouse at the Indiana State Prison ("ISP"). ECF 10. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On December 2, 2021, Griffin was transferred from the Pendleton Correctional Facility to ISP, where he was placed in D-cellhouse, an administrative segregation unit. ECF 10 at 5. He is housed in D-cellhouse because he has a history of violence, including

assaulting prison staff, and filing numerous legal challenges and complaints against Indiana Department of Correction ("IDOC") staff. *Id*.

While Griffin has been housed in D-cellhouse, he asserts he has been subjected to new restrictions that were implemented by the defendants in IDOC's restrictive housing units (both disciplinary and administrative) in response to a number of violent inmate assaults on prison staff that occurred at Pendleton and ISP. *Id*. at 2, 4. He states the new restrictions prohibit him from ordering food items from the commissary and he has been denied hygiene, sanitation, and cleaning supplies, as well as other items. *Id*. at 3-5. Griffin asserts that inmates in administrative segregation are subjected to the new restrictions while those in general population are not subjected to the same conditions even though neither group of inmates have been found guilty of any disciplinary infraction.[1] *Id*. at 3-4. Griffin asserts there is no rational basis for treating these two inmate populations differently and the new restrictions constitute purposeful and intentional discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.[2] *Id*. at 4, 6.

---

[1] Inmates housed in administrative segregation may be under investigation, present a threat to the safety of others, or be a threat to their own safety. ECF 10 at 3.

[2] While Griffin has not explicitly raised the issue of whether being placed in D-cellhouse violated his due process rights, the Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). However, placement in long-term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (determination of whether

Under the Equal Protection Clause, because Griffin does not suggest that the defendants targeted him due to his membership in a suspect class, rational basis review applies. *See Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). "Where disparate treatment is not based on a suspect class and does not affect a fundamental right, prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest. Prison classifications are presumed to be rational and will be upheld if any justification for them can be conceived." *Id.* "To prevail under the rational basis standard, a plaintiff must prove that (1) the defendant intentionally treated him differently from others similarly situated, (2) the defendant intentionally treated him differently because of his membership in the class to which he belonged, and (3) the difference in treatment was not rationally related to a legitimate state interest." *Reinebold v. Bruce*, 18 F.4th 922, 925 (7th Cir. 2021) (quotation marks omitted). "To be considered similarly situated, a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects. The similarly situated analysis is not a precise formula, but we have stated repeatedly that what is clear is that similarly situated individuals must be very similar indeed." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

---

240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage); *see also Atwater v. Nickels*, No. 21-2510, 2022 WL 1468698, at *1 (7th Cir. May 10, 2022) (citing *Marion*, 559 F.3d at 694-98) (same). Because Griffin had only been in D-cellhouse for a little more than three months when he filed his first amended complaint, he has not stated a due process claim.

3

Griffin, who is housed in an administrative segregation unit, is not similarly situated with inmates housed in general population. Inmates in administrative segregation pose different security risks than those in general population as they may be under investigation, present a threat to the safety of others, or be a threat to their own safety. ECF 10 at 3. However, even if Griffin were similarly situated to general population inmates, the defendants implemented the new restrictions in IDOC's restrictive housing units in response to a number of violent inmate assaults on prison staff that occurred at Pendleton and ISP. Given these events and the surge in violence in these facilities, there was a rational basis for implementing the new restrictions. It is rational to treat inmates in administrative segregation differently than those inmates in general population because they pose different security risks. While the new restrictions undoubtedly make confinement less comfortable, they are justified by the security concerns. "Prison officials have broad administrative and discretionary authority over the institutions they manage." *Westerfer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2021) (quotation marks, brackets, and citations omitted). Accordingly, Griffin's allegations do not state a violation of the Equal Protection Clause.[3]

---

[3] While it is not entirely clear from his first amended complaint, Griffin may also be asserting that his constitutional rights were violated because the defendants confiscated his property while he has been housed in D-cellhouse. ECF 10 at 3. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 et seq.) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED on February 21, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). While Griffin does not specifically allege that the defendants confiscated specific items of his property, if they had taken his property, he has not stated a claim here.

5